IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| SIERRA COOPER, | * | |
| *Plaintiff*, | * | |
| v. | * | Civil Action No. RDB-24-2120 |
| I.Q. DATA INTERNATIONAL, INC., | * | |
| *Defendant*. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

In this consumer protection case, Plaintiff Sierra Cooper ("Plaintiff" or "Cooper") raises federal and state statutory claims against Defendant I.Q. Data Systems ("Defendant" or "I.Q. Data"), a debt collection agency working on behalf of Hudson Homes Management LLC ("Hudson Homes"), from whom she rented a residential property between 2021 and 2023. (ECF No. 6.) On July 23, 2024, Cooper initiated this action by filing in this Court a four-Count Complaint (ECF No. 1) alleging unfair and deceptive business practices under the Maryland Consumer Protection Act ("MCPA"), MD. CODE ANN., COM. LAW § 13-301, *et seq.*, the Maryland Consumer Debt Collection Act ("MCDCA"), MD. CODE ANN., COM. LAW § 14-201, *et seq.*, its federal analogue, the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, and the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.* Defendant timely filed a Motion to Dismiss (ECF No. 5). Subsequently, Plaintiff filed the operative Amended Complaint (ECF No. 6) that supplemented her reiterated claims with additional facts. *See* (ECF No. 6–1) (redlined Amended Complaint). Specifically, in her Amended Complaint (ECF No. 6), Plaintiff alleges four claims against Defendant. She alleges

state law claims of Violation of the Maryland Consumer Debt Collection Act (Count I) and Violation of the Maryland Consumer Protection Act (Count II); and federal law claims of Violation of the Fair Credit Reporting Act (Count III) and Violation of the Fair Debt Collection Practices Act (Count IV).  (*Id.* at 7, 8, 9, 12.)

Presently pending before this Court are Defendant's Motion to Dismiss as to Plaintiff's Original Complaint (ECF No. 5) ("Defendant's First Motion to Dismiss"), and Defendant's Moton to Dismiss Plaintiff's First Amended Complaint (ECF No. 8) ("Defendant's Second Motion to Dismiss").[1]  Cooper has responded in Opposition to both of Defendant's Motions to Dismiss (ECF Nos. 7, 9).  The parties' submissions have been reviewed, and no hearing is necessary.  Loc. R. 105.6 (D. Md. 2023).  For the reasons set forth below, Defendant's First Motion to Dismiss (ECF No. 5) is DENIED AS MOOT, and Defendant's Second Motion to Dismiss (ECF No. 8) is DENIED.

## BACKGROUND

In ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), this Court "accept[s] as true all well-pleaded facts in a complaint and construe[s] them in the light most favorable to the plaintiff." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citing *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)).  The following facts are derived from Plaintiff's First Amended Complaint and accepted as true for the purpose of Defendant's motions.

Plaintiff rented 4311 Eldone Rd. Baltimore, MD 21229 (the "Property") from Hudson

---

[1] I.Q. Data titles its Second Motion to Dismiss (ECF No. 8) under Federal Rule of Civil Procedure 12(b)(6) alone, but it raises standing as a jurisdictional issue, which is properly brought under Rule 12(b)(1).  Accordingly, the Court addresses I.Q. Data's motion under both Rule 12(b)(6) and Rule 12(b)(1).

Homes for residential purposes between February 2021 and June 2023. (ECF No. 6 ¶ 6.) Towards the end of Plaintiff's tenancy, she learned that the Property did not have a Baltimore City rental license from February 2021 to October 2022. (*Id.* ¶¶ 6, 8, 10.) Plaintiff alleges that Maryland law and Baltimore City ordinances require a landlord to obtain a rental license before seeking to collect rent from tenants. (*Id.* ¶ 9.) In May 2023, Hudson Homes sued Plaintiff in the District Court of Maryland for Baltimore City to recover $27,973.44 in unpaid rent. (*Id.* ¶ 11.) The District Court for Baltimore City held that because Hudson Homes was not licensed from February 2021 to October 2022, it could not recover rent from that period. (*Id.*) Accordingly, the court dismissed the lawsuit with prejudice and reduced the amount owed the $8,221.93 in rent accrued while Hudson Homes was licensed. (*Id.*) Cooper successfully secured rental assistance to pay the $8,221.93, but Hudson Homes refused the payment. (*Id.* ¶ 12.) After Cooper moved out of the Property on June 29, 2023, Hudson Homes hired Defendant I.Q. Data to pursue the entire rental debt, including the debt dismissed by the District Court for Baltimore City. (*Id.* ¶ 13.)

I.Q. Data's collection efforts against Cooper included its December 6, 2023 phone call to her during which she explained the District Court for Baltimore City's order regarding the unlicensed period. (*Id.* ¶ 14.) Cooper alleges that during the call I.Q. Data's "employee stated something to the effect of 'everyone has excuses but you still owe the money and we're going to put it on your credit reports if you don't pay.'" (*Id.*) Cooper made several subsequent calls to I.Q. Data regarding the prior ruling, but it insisted that she pay the rent from the unlicensed period. (*Id.*) On December 7, 2023, I.Q. Data sent Cooper a collection letter demanding $47,239.26, including $869.96 in interest. (*Id.* ¶ 15.) I.Q. Data also furnished her debt to

consumer reporting agencies ("CRAs") that then published the debt. (*Id.* ¶ 16.) The credit reporting agencies began reporting a delinquent collection account on Cooper's credit reports. (*Id.* ¶ 17.) The trade line[2] on the credit reports stated that Defendant was the furnisher and Hudson Homes was the creditor of the account, and Cooper owed $47,575. (*Id.*) Although the District Court for Baltimore City dismissed the portion of the debt arising from the period in which Hudson Homes was unlicensed, this delinquent amount consisted of rental obligations from that period. (*Id.*) Plaintiff alleges that the "$47,575 false debt caused [her] to panic, believing that she would not be able to obtain housing again until paying the insurmountable debt that she does not owe." (*Id.* ¶ 18.)

On March 22, 2024, Plaintiff sent letters ("Dispute Letters") disputing the trade line to each of the credit reporting agencies and attached a copy of the court order dismissing the debt from the unlicensed period. (*Id.* ¶¶ 19, 20.) In accordance with their duty under the Fair Credit Reporting Act, the credit reporting agencies sent Cooper's Dispute Letters to I.Q. Data. (*Id.* ¶ 21.) Cooper alleges that I.Q. Data failed to conduct a reasonable investigation, such that the trade line was not removed and I.Q. Data and the CRAs continued to report a delinquent debt. (*Id.* ¶ 22.) According to Cooper, the CRA's "reporting continues to place Plaintiff's reputation in a false light because others have access" to the information contained in the report. (*Id.*) Cooper further alleges that her credit standing declined, causing her to experience emotional distress and related physical symptoms. (*Id.* ¶ 23.) Finally, Cooper alleges that she was denied credit due to the reporting. (*Id.* ¶ 24.)

---

[2] A trade line is the portion of a credit report that describes each credit account and communicates to lenders a creditor's potential creditworthiness. *See* (ECF No. 6 ¶ 17 (describing Cooper's trade line as to rental debt)).

4

On July 23, 2024, Cooper initiated this action by filing in this Court a four-Count Complaint alleging that I.Q. Data engaged in prohibited debt collection and credit reporting activities in violation of the MCDCA §§ 14-202(3), (8), (11), including violations of the FCRA §§ 1692(e), (f) (Count I); engaged in prohibited debt collecting and reporting activities in violation of the MCPA §§ 13-301, 13-303, 13-303(14)(iii) (Count II); failed to investigate Plaintiff's disputed debt in violation of the FCRA §§ 1681-2(a), (b) (Count III); and engaged in prohibited debt collection and credit reporting activities in violation of the FDCPA § 1692e(2)(A) (Count IV). (ECF No. 1); *see also* (ECF No. 6-1). On September 20, 2024, I.Q. Data filed its First Motion to Dismiss (ECF No. 5), and on October 2, 2024, Plaintiff filed her Response in Opposition (ECF No. 7) and the operative Amended Complaint (ECF No. 6). On October 17, 2024, I.Q. Data filed its Second Motion to Dismiss (ECF No. 8) as to the Amended Complaint. On October 31, 2024, Cooper responded in Opposition (ECF No. 9), and the time to file a reply has passed. This matter is now ripe for review.

## STANDARD OF REVIEW

### I.  Motion To Dismiss For Lack of Subject Matter Jurisdiction

A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges a court's authority to hear the matter brought by a complaint. *See Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005). A challenge to jurisdiction under Rule 12(b)(1) may proceed either as a facial challenge, asserting that the allegations in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting "that the jurisdictional allegations of the complaint [are] not true." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (quoting *Adams v. Bain*, 697 F.2d 1213, 1219

5

(4th Cir. 1982)). Where, as here, a defendant raises a facial challenge to jurisdiction, "the plaintiff, in effect is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." *Adams*, 697 F.2d at 1219. "In that situation, the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns*, 585 F.3d at 192.

II.    **Motion to Dismiss For Failure to State a Claim for Relief**

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (quoting *Bell Atl., Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). A complaint need not include "detailed factual allegations." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A complaint must, however, set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotations omitted). "Threadbare recitals of the elements

of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *see A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011).

## ANALYSIS

### I.   I.Q. Data's First Motion to Dismiss

"Ordinarily, an amended complaint supersedes those that came before it." *Goodman v. Diggs*, 986 F.3d 493, 498 (4th Cir. 2021). This Court has held that the filing of an Amended Complaint renders moot pending motions to dismiss the original complaint as long as the Amended Complaint addresses the issues raised in the prior motion to dismiss. *See Howard v. Ocwen Loan Servicing, Inc.*, Civ. No. RDB-18-3296, 2019 WL 4750333, at *2 (D. Md. Sept. 30, 2019); *Verderamo v. Mayor & City Council of Balt.*, 4 F. Supp. 3d 722, 724 n.3 (D. Md. 2014). In this case, Cooper's Amended Complaint (ECF No. 6) raises the same four claims as her original Complaint (ECF No. 1) but includes new factual allegations regarding a December 6, 2023 phone call with I.Q. Data, and a December 7, 2023 collection letter pertaining to her allegations in Count I. (ECF No. 6-1 ¶¶ 14, 15, 30, 32.) In its Second Motion to Dismiss (ECF No. 8), I.Q. Data refines its original arguments to assert them as to the Amended Complaint. (ECF No. 8-1 at 5, 7, 9.) Therefore, Defendant's First Motion to Dismiss (ECF No. 5) is DENIED AS MOOT. *See, e.g., Reese v. H&S Bakery, Inc.*, Civ. No. RDB-17-3085, 2018 WL 4005226, at *4 (D. Md. Aug. 22, 2018) (construing as moot first motion to dismiss that raised same arguments as second motion).

### II.  I.Q. Data's Second Motion to Dismiss

In I.Q. Data's Second Motion to Dismiss (ECF No. 8), it contends that Cooper's Amended Complaint should be dismissed for failure to state a claim for relief under Federal

Rule of Civil Procedure 12(b)(6) and lack of subject matter jurisdiction under Rule 12(b)(1). *See* (ECF No. 8-1 at 3–11.)  Specifically, I.Q. Data argues that: (1) Cooper's state statutory claims in Counts I and II are preempted by the federal Fair Credit Reporting Act ("FCRA"), (*id.* at 4); (2) Cooper's Maryland Consumer Protection Act ("MCPA") claim in Count II should be dismissed for failure to allege the required damages, (*id.* at 5);  (3) Cooper's federal statutory claims in Counts III and IV should be dismissed because it complied with its investigatory obligations, (*id.* at 7);  and (4) Cooper's federal Fair Debt Collection Practices Act ("FDCPA") claim in Count IV should be dismissed for lack of subject matter jurisdiction because she has not sufficiently alleged Article III standing (*id.* at 9).  In Opposition (ECF No. 9), Cooper asserts that her state law claims in Counts I and II are not preempted because they relate to I.Q. Data's collection efforts not covered by the FCRA, and she has sufficiently pled these claims because Maryland law allows recovery of emotional distress.  (*Id.* at 9–18.)  Additionally, Cooper argues that she has established Article III standing as to Count IV by alleging that I.Q. Data falsely reported her credit information to others without proper investigation.  (*Id.* at 19–21.)  The Court addresses each contention in turn, beginning with Article III standing as a threshold jurisdictional issue.  *See Carrero v. Farrelly*, 310 F. Supp. 3d 542, 545 (D. Md. 2018) ("A challenge to a plaintiff's standing 'implicates the[e] court's subject matter jurisdiction.'" (quoting *Long Term Care Partners, LLC v. United States*, 516 F.3d 225, 230 (4th Cir. 2008)).

    **a.**    **Cooper has established Article III standing.**

Article III of the United States Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies." U.S. CONST. art. III, § 2.  "[S]tanding is an essential and unchanging part of the case-or-controversy requirement of Article III" that gives meaning to

these jurisdictional limits by "'identify[ing] those disputes which are appropriately resolved through the judicial process.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)). "The plaintiff, as the party invoking federal jurisdiction, bears the burden to establish standing" by showing that she "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc., v. Robins*, 578 U.S. 330, 338 (2016); *see also Friends for Ferrell Parkway, LLC v. Stasko*, 282 F.3d 315, 320 (4th Cir. 2002) (noting plaintiff's burden). In this case, I.Q. Data argues that Cooper fails to establish an injury-in-fact and traceability as to her claim under FDCPA § 1692e(2)(A) in Count IV because she does not sufficiently allege that her credit was denied and does not establish a causal connection between I.Q. Data's alleged actions and any injury. (ECF No. 8-1 at 10.) As explained below, Cooper has sufficiently alleged Article III standing.

In her Amended Complaint, Cooper has sufficiently alleged both injury-in-fact and traceability. To demonstrate an injury in fact, a plaintiff must show "an invasion of a legally-protected interest which is (a) concrete and particularized, and (b) actual or imminent." *Lujan*, 504 U.S. at 560-61 (citations omitted); *Griffin v. Dep't of Lab. Fed. Credit Union*, 912 F.3d 649, 653 (4th Cir. 2019). An injury-in-fact is not limited to financial and economic losses. *Pender v. Bank of Am. Corp.*, 788 F.3d 354, 366 (4th Cir. 2015). Indeed, the U.S. Court of Appeals for the Fourth Circuit has held that certain violations of the FDCPA—including demands of "an inflated sum" in violation of § 1692e(2)(A)—that cause "emotional distress, anger, and frustration" constitute an injury-in-fact. *Moore v. Blibaum & Assocs., P.A.*, 693 F. App'x 205, 206 (4th Cir. 2017); *accord Ben-Davies v. Blibaum & Assocs., P.A.*, 695 F. App'x 674, 677 (4th Cir.

9

2017). As Judge Hollander of this Court has explained, "the Court must assume the truth of the allegations" of traceability in an FDCPA claim during the pleading stage. *Richards v. NewRez LLC*, Civ. No. ELH-20-1282, 2021 WL 1060286, at *20 (D. Md. Mar. 18, 2021); *see also Kerns*, 585 F.3d at 192. Cooper has alleged that I.Q. Data stated she owed $47,239.26—rather than the reduced amount of $8,221.93—which caused her "concrete harm including emotional distress." (ECF No. 6 ¶¶ 11, 15, 23, 55.) These allegations are sufficient to establish both an injury in fact and traceability for Cooper's claim of violation of FDCPA § 1692e(2)(A) in Count IV. *See Moore v. Blibaum & Assocs., P.A.*, 693 F. App'x at 206; *Biber v. Pioneer Credit Recovery, Inc.*, 229 F. Supp. 3d 457, *466* (E.D. Va. 2017). Therefore, Defendant's Motion to Dismiss (ECF No. 8) is DENIED as to Count IV.

### b. Plaintiff's Counts I and II are not preempted by the Fair Credit Reporting Act.

At this pleading stage, Cooper has sufficiently alleged Maryland Consumer Debt Collection Act ("MCDCA") and Maryland Consumer Protection Act ("MCPA") claims that are not preempted by the federal Fair Credit Reporting Act ("FCRA"). The FCRA is "a comprehensive statutory scheme designed to regulate the consumer reporting industry." *Ross v. F.D.I.C.*, 625 F.3d 808, 812 (4th Cir.2010). The FCRA creates a duty for furnishers of credit information to provide accurate information, including a duty to correct inaccuracies and to investigate disputed information upon notice from a credit reporting agency. 15 U.S.C. § 1681s–2. Congress amended the FCRA in 1996 to address the disparity in reporting laws emerging among states that had, until then, passed their own regulations to supplement the FCRA. *Ross*, 625 F.3d at 812. To avoid this patchwork result, the amended FCRA included a preemption provision, 15 U.S.C. § 1682t(b), which states in part that, "no requirement or

prohibition may be imposed *under the laws of any State* . . . with respect to any subject matter regulated under . . . [S]ection 1681s–2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies . . . ." 15 U.S.C. § 1681t(b)(1)(F) (emphasis added).  Thus, as Judge Xinis of this Court recently explained, "the FCRA preempts all state statutory claims 'arising from reporting inaccurate information to credit reporting agencies.'" *Brown v. Credit One Bank, N.A.*, Civ. No. PX-23-2512, 2024 WL 3993194, at *3 (D. Md. Aug. 28, 2024) (quoting *Magruder v. Educ. Sys. Fed. Credit Union*, 194 F. Supp. 3d 386, 388–89 (D. Md. 2019)).

Cooper's Count I arises under §§ 14-202(3), (8), and (11) of the MCDCA.  These Sections prohibit (1) collecting or attempting to collect an alleged debt by "claim, attempt, or threa[t] to enforce a right with knowledge that the right does not exist," MD. CODE ANN., COM. LAW § 14-202(8); (2) disclosing or threatening "to disclose information which affects [a] debtor's reputation for credit worthiness [knowing] that the information is false," *id.* § 14-202(3); and (3) "[i]n collecting or attempting to collect an alleged debt," "engag[ing] in any conduct that violates §§ 804 through 812 of the federal Fair Debt Collection Practices Act," *id.* § 14-202(11).  *See also Alexander v. Carrington Mortgage Servs., LLC*, 23 F.4th 370, 373–74 (4th Cir. 2022) (discussing MCDCA).  In her Count I, Cooper claims that I.Q. Data directly violated §§ 14-202(3) and (8), and violated § 14-202(11) by engaging in conduct that violated § 1692e(2)(A) and § 1692f of the FDCPA.  (ECF No. 6 ¶¶ 27–29, 33.)

At this pleading stage, Cooper has alleged facts sufficient to demonstrate that her MCDCA claim is not preempted by the FCRA.  As Cooper acknowledges, to the extent violations of these provisions arose from I.Q. Data's credit reporting activity, they would be

11

preempted by the FCRA. *See Brown*, 2024 WL 3993194, at *3; *Richards*, 2022 WL 657568, at *23 ("[C]laims for the furnishing of false information to credit reporting agencies under . . . the MCDCA and the MCPA . . . run into the teeth of the FCRA preemption provision." (citing *Ross v. F.D.I.C.*, 625 F.3d 808, 813 (4th Cir. 2010) (internal quotations omitted)); *see also White v. Green Tree Servicing, LLC*, 118 F. Supp. 3d 867 (D. Md. 2015). Cooper has sufficiently alleged, however, that her claims under the MCDCA arise from I.Q. Data's debt collection activity, not its credit reporting activity. She alleges that I.Q. Data violated § 14-202(8) of the MCDCA by attempting to enforce against her a right that it knew did not exist. Similarly, she alleges that I.Q. Data violated § 14-202(11)—and § 1692e and § 1692f of the FCRA—by attempting to collect from Cooper debt that it knew was false. Such debt collection practices are not subject to the FCRA's preemption provision, which only applies to credit reporting activity. *See Ross*, 625 F.3d at 813. At this pleading stage, Cooper has alleged facts sufficient to make a prima facie showing that her allegations under the MCDCA relate to I.Q Data's debt collection activity, which is not subject to the FCRA preemption.[3] Accordingly, Cooper's Count I is not preempted by the FCRA.

In Count II, Cooper claims that I.Q. Data violated §§ 13-301, 13-303, 13-301(14)(iii) of the Maryland Consumer Protection Act ("MCPA"). (*Id.* ¶¶ 36–38.) The MCPA states that: an entity "may not engage in any unfair, abusive, or deceptive trade practice" in the "lease . . . of consumer realty," MD. CODE ANN., COM. LAW § 13-303(1). The MCPA provides that a

---

[3] To the extent Cooper premises Count I on her allegation that I.Q. Data violated § 14-202(3) of the MCDCA by reporting debt that it knew was false, such claim may be subject to preemption under § 1681t(b) of the FCRA because it arises from I.Q. Data's alleged credit reporting activity. At this pleading stage, however, Cooper has alleged facts sufficient to show that her Count I arises at least in part from I.Q. Data's debt collection activities, which are not subject to the FCRA's preemption provision. *See, e.g., Brown*, 2024 WL 3993194, at *3.

12

violation of the MCDCA § 14-202 is also a violation of MCPA § 13-301(14)(iii).  Relatedly, the MCDCA provides that any conduct that violates §§ 1692b-k of the federal Fair Debt Collection Practices Act ("FDCPA") also violates the MCDCA § 14-202.  MD. CODE ANN., COM. LAW § 14-202(11).  Effectively, therefore, the MCPA authorizes civil actions for violations of the MCPA, the MCDCA, and the FDCPA.

Of relevance here, the FDCPA prohibits: "the false representation of . . . the character, amount, or legal status of any debt," § 1692e(2)(A); "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false," § 1692e(8); "unfair or unconscionable means to collect or attempt to collect any debt," § 1692f.  To the extent that Cooper alleges violation of the MCPA based on I.Q. Data's "debt . . . *reporting* activities," (ECF No. 6 ¶ 36 (emphasis added)) such a claim is squarely preempted by the FCRA.  *See* 15 U.S.C. § 1681t(b); *Richards*, 2022 WL 657568, at *23.  Cooper also alleges in Count II, however, that I.Q. Data violated the MCPA in its "debt *collecting . . .* activities . . . [and] collection of consumer debts."  (ECF No. 6 §§ 36–37 (emphasis added).)  For the same reasons discussed above, therefore, Count II is not preempted to the extent it rests on I.Q. Data's debt collection activity.  At this pleading stage, Cooper has sufficiently alleged an MCPA claim in relation to I.Q. Data's debt collection activities.

**c. Plaintiff's Count II alleges actual damages.**

As noted above, the MCPA explicitly provides that a violation of the MCDCA constitutes "unfair or deceptive trade practices" in violation of the MCPA.  *See Fontell v. Hassett*, 870 F. Supp. 2d 395, 410 (D. Md. 2012) (citing MD. CODE ANN., COM. LAW § 13-301(14)(iii)).  Significantly, under the MCDCA, a "collector who violates any provision of this subtitle is

liable for any damages proximately caused by the violation, including damages for emotional distress or mental anguish suffered with or without accompanying physical injury." MD. CODE ANN., COM. LAW. § 14-203. To sufficiently allege unfair or deceptive trade practices under the MCPA, a private plaintiff must allege that: "(1) the defendant engaged in an unfair or deceptive trade practice or misrepresentation, (2) the plaintiff relied upon the misrepresentation, and (3) doing so caused the plaintiff actual injury." *Barr v. Flagstar Bank, FSB*, 303 F. Supp. 3d 400, 415–16 (D. Md. 2018) (quoting *Palermino v. Ocwen Loan Servicing, LLC*, Civ. No. TDC-14-0522, 2015 WL 6531003, at *2 (D. Md. Oct. 26, 2015)). "Because an MCPA claim sounds in fraud, it is subject to Rule 9(b)'s heightened pleading standard," meaning that it must "describe the time, place, and contents of the false representations." *Id.* (first citing *Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 781 (4th Cir. 2013); and then quoting *Galante v. Ocwen Loan Servicing, LLC*, Civ. No. ELH-13-1939, 2014 WL 3616354, at *9 (D. Md. July 18, 2014)); *see also* FED. R. CIV. P. 9(b) (requiring party to "state with particularity the circumstances constituting fraud . . . ."); *Marchese v. JPMorgan Chase Bank, N.A.*, 917 F. Supp. 2d 452, 467–68 (D. Md. 2013) (explaining MCPA actual injury requirement). In its Second Motion to Dismiss, I.Q. Data contends that Cooper's alleged emotional damages do not constitute an actual injury under the MCPA. (ECF No. 8-1 at 5–6).

At this pleading stage, Cooper's allegations of emotional distress are sufficient to state an actual injury under the MCPA.[4] This Court has repeatedly held that plaintiffs sufficiently

---

[4] Defendant recites the elements of MCPA claims and notes that, "[t]o establish reliance under the MCPA, Plaintiffs must plead and prove that the false or misleading statement substantially induced their choice." (ECF No. 8-1 at 5–6 (quoting *Peete-Bay v. Educational Credit Management Corp.*, 131 F. Supp. 3d 422, 432 (D. Md. 2015).) Although Defendant does not appear to argue that Plaintiff failed to sufficiently plead reliance, the Court notes that Cooper has sufficiently pled the reliance element of the MCPA by alleging that, based on I.Q. Data's December 6, 2023, statement to her via phone that she owed Hudson Homes debt included the debt dismissed

14

plead MCPA injury when they allege emotional stress and lost credit opportunities "as a result of a defendant's MCPA violations." *Marchese*, 917 F. Supp. 2d at 468 (citing *Barry v. EMC Mortg. Corp.*, Civ. No. DKC-10-3120, 2012 WL 3595153, at *8 (D. Md. Aug. 17, 2012)); *accord Allen v. CitiMortgage, Inc.*, Civ. No. CCB-10-2740, 2011 WL 3425665, at *10 (D. Md. Aug. 4, 2011). As discussed above, Cooper's MCPA claim in Count II arises under § 13-303, which prohibits unfair or deceptive trade practices, and § 13-301(14)(iii), which makes violations of the MCDCA violations of the MCPA. (ECF No. 6 ¶¶ 37, 38.) Cooper's MCPA claim incorporates by reference her allegations related to I.Q. Data's alleged violation of the MCDCA, including its December 6, 2023, statements during a phone call with Cooper that she owed debt including that dismissed with prejudice by the District Court of Maryland for Baltimore City. (*Id.* ¶¶ 30–32, 35.) Cooper also alleges that I.Q. Data's alleged activity caused her to "suffer[] actual damages including emotional distress with physical manifestations." (*Id.* ¶ 40.) Accordingly, Cooper has sufficiently alleged emotional distress, which constitutes actual injury under the MCPA. *See Alston v. Freedom Plus/Cross River*, Civ. No. TDC-17-0033, 2018 WL 770384, at *7 (D. Md. Feb. 7, 2018). Defendant's Second Motion to Dismiss (ECF No. 8) is DENIED as to Count II.

### d. Plaintiff sufficiently states a claim under the FCRA in Count III.

Cooper has alleged facts sufficient to state a claim under the federal Fair Credit Reporting Act ("FCRA") in Count III. The FCRA requires that information reported to CRAs be accurate. 15 U.S.C. § 1681s-2. Debt collectors, therefore, "shall not furnish any

---

by the District Court of Maryland for Baltimore City's decision, she "made several subsequent phone calls" in attempts to address the issue. She further alleges that Defendant's actions contributed to her emotional distress. (ECF No. 6 ¶¶ 14, 26, 34, 35.)

information relating to a consumer to any [CRAs] if the person knows or has reasonable cause to believe that the information is inaccurate." *Id.* § 1681s-2(a)(1)(A). If a debt collector receives notice of a dispute regarding the completeness or accuracy of information it has reported, it must conduct an investigation with respect to the disputed information. *Id.* § 1681s-2(b)(1)(A). As the Fourth Circuit very recently explained, "[o]ur circuit has yet to delineate the elements of an FCRA failure to reasonably investigate claim . . . [b]ut . . . the following three elements are essential to this claim: '(1) the plaintiff submitted a dispute over the accuracy of information on a credit report to a [CRA]; (2) the [CRA] notified the furnisher of that dispute; [and] (3) the furnisher failed to conduct a reasonable investigation to determine whether the disputed information can be verified." *Roberts v. Carter-Young, Inc.*, 131 F.4th 241, 253 (4th Cir. 2025) (quoting opinion below). Additionally, to state a claim under §1681s-2 of the FCRA, a plaintiff "must allege facts that, if true, indicate an inaccuracy or incompleteness in their credit report that is objectively and readily verifiable." *Id.* at 253.

In her First Amended Complaint, Cooper alleges that I.Q. Data violated FCRA § 1681s-2, by failing to investigate her dispute even after she provided notice of the dispute. (ECF No. 6 ¶¶ 47–48.) Cooper alleges that she sent a Dispute Letter to the CRAs on March 22, 2024, in which she disputed the $47,575.00 debt on her credit report. (*Id.* ¶¶ 18–19.) In that letter, the text of which Cooper includes in her First Amended Complaint, she wrote: (1) "I do not owe $47,575;" (2) Hudson Homes had previously sued her for $27,973.44 of unpaid rent; (3) in May 2023, a judge for the District Court of Maryland for Baltimore City reduced the amount to $8,221.93 via court order; and (4) *Assanah-Carroll v. L. Offs. of Edward J. Maher, P.C.*, limited the amount Hudson Homes could recover from her. 480 Md. 394, 281 A.3d 72

16

(2022); (ECF No. 6 ¶¶ 18–19). Cooper alleges that she attached the court's ruling to the Dispute Letter and the CRAs sent the letters to I.Q. Data. (*Id.* ¶¶ 20, 21.) She further alleges that despite receiving notice of the dispute, I.Q. Data failed to conduct a reasonable investigation. (*Id.* ¶¶ 19–24.) I.Q. Data argues that Cooper's Count III FCRA[5] claim should be dismissed because she has not sufficiently alleged that the relevant debt was inaccurate. (ECF No. 8-1 at 9.) I.Q. Data argues that Cooper's letter does not contain information that the debt was inaccurate and does not provide relevant jurisprudence. (*Id.*) I.Q. Data also asserts that Cooper did not attach the court order to her Dispute Letter or First Amended Complaint. (*Id.*)

At the pleading stage, the Court need only determine whether Cooper's factual allegations would be "objectively and readily verifiable *by the furnisher*." *Roberts*, 131 F.4th at 252 (emphasis added). Cooper makes numerous objectively and readily verifiable allegations as to each of the three elements of an FCRA claim. As an initial matter, she repeatedly alleges that she informed I.Q. Data and the CRAs that the $47,575 debt was inaccurate. *E.g.*, (ECF No. 6 ¶¶ 11, 15, 17.) In Cooper's Demand Letter alone, there are sufficient factual allegations for I.Q. Data to "objectively and readily verif[y]" the amount of the disputed debt. *Roberts*, 131 F.4th at 253. Cooper provided the alleged delinquent amount; the genesis of the alleged delinquent account; her rental address and landlord; the sections of Baltimore City Code relevant to Hudson Homes's licensing; the date Hudson Homes sued her; and the amount of

---

[5] Though Defendant states Plaintiff's Count III FCRA and FDCPA claim should be dismissed (ECF No. 8-1 at 7), Count III only invokes the FCRA (ECF No. 6 ¶¶ 40–49). Defendant's headings and argument do not suggest that it intended to challenge Plaintiff's FDCPA claim in Count IV under Rule 12(b)(6). *See* (ECF No. 8-1 at 7–10.) To the extent Defendant intended to assert such an argument, Plaintiff's has sufficiently alleged an FDCPA claim in Count IV for the reasons explained above.

the original suit. (ECF No. 6 at 6.) Although I.Q. Data disputes that Cooper attached the ruling to her letter; in deciding a motion under Rule 12(b)(6), the Court accepts the truth of the plaintiff's allegations. *See Wikimedia Found.*, 857 F.3d at 208 (citing *SD3, LLC*, 801 F.3d at 422). Next, Cooper alleges that the CRAs also forwarded her Dispute Letter to I.Q. Data, but I.Q. Data continued both to report the false debt and to attempt to collect it from her. Accordingly, Cooper has sufficiently alleged violation of the FCRA, and Defendant's Second Motion to Dismiss (ECF No. 8) is DENIED as to Count III.

## CONCLUSION

For the reasons stated above, Defendant's First Motion to Dismiss (ECF No. 5) is DENIED AS MOOT, and Defendant's Second Motion to Dismiss (ECF No. 8) is DENIED.

A separate Order follows.

Date: July 2, 2025

/s/
Richard D. Bennett
United States Senior District Judge